```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

NATALIE LONGSWORTH,

                Plaintiff,
                                        MEMORANDUM AND ORDER
        -against-
                                        17-CV-6787(KAM)(ARL)

COUNTY OF NASSAU, et al.

                Defendants.

----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge**:

Plaintiff Natalie Longsworth ("plaintiff") brought this action against the County of Nassau, New York ("the County") and several of her former supervisors at the Nassau County Police Department ("the supervising officers," and together with the County, "defendants") pursuant to federal, state, and local anti-discrimination statutes, alleging discrimination based on her race.  Defendants previously moved to dismiss plaintiff's state and local claims as procedurally barred due to her failure to comply with New York state law requirements applicable to suits against counties.  The court granted the motion to dismiss in part, but denied the motion without prejudice with respect to plaintiff's state claims against the supervising officers in their individual capacities.

1

Defendants have now renewed their motion to dismiss the state claims against the supervising officers in their individual capacities, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons herein, the renewed motion to dismiss is granted in part and denied in part.

## BACKGROUND

The factual allegations in this case were described in the court's prior decision regarding defendants' motion to dismiss, and are summarized only briefly here. From approximately October 21, 2015 through October 18, 2016, plaintiff worked as a Police Communications Operator for the Nassau County Police Department ("the Police Department").[1] (ECF No. 5, Amended Complaint ("Am. Compl."), ¶ 12.) The Police Department terminated plaintiff's employment after a one-year probationary period, purportedly for "unsatisfactory performance." (*Id.* ¶¶ 27, 78-79.)

Plaintiff alleges that defendants discriminated against her on the basis of her race throughout her employment. (*Id.* ¶¶ 1-3.) The amended complaint alleges various purportedly discriminatory interactions with her supervising officers. Plaintiff initially sought to remedy the alleged discrimination

---

[1] Plaintiff also worked as an Operator for the Police Department for a brief three-week period in early 2015. (*Id.* ¶¶ 24-25.) However, plaintiff's allegations largely pertain to her second, longer stint of employment ending in October 2016.

through administrative channels.  On September 26, 2017, plaintiff cross-filed complaints with the New York State Department of Human Rights and the United States Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶¶ 7-8.)  On January 19, 2017, plaintiff cross-filed a second set of complaints challenging the same conduct, as well as her allegedly discriminatory termination.  (*Id.*)

After receiving a Right to Sue letter from the EEOC, plaintiff initiated this civil action against the County, the Police Department, and the supervising officers (in both their official and individual capacities).  Plaintiff's amended complaint alleged that defendants discriminated against her on the basis of her race in violation of 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and 42 U.S.C. § 1983; New York Executive Law § 296; and Title C-2 § 21-9.8(1) of the Nassau County Local Laws.  (*Id.* ¶ 1.)

Plaintiff did not file a notice of claim with the County within ninety days of the events giving rise to her state and local claims, which is a requirement under New York law.  *See* N.Y. Cnty. Law § 52; N.Y. Gen. Mun. Law § 50-e.  Defendants therefore moved to dismiss plaintiff's state and local claims as procedurally barred.  (ECF No. 14, First Motion to Dismiss.)  Plaintiff conceded that her state and local claims against the County should be dismissed for failure to file a notice of

3

claim, and accordingly withdrew them. (ECF No. 15, Mem. of Law in Opposition to First Motion to Dismiss, at 4.) Plaintiff also acknowledged that her claims against the supervising officers in their *official* capacities were procedurally barred. (*Id.* at 4.) Plaintiff, however, argued that her claims against the supervising officers in their *individual* capacities should proceed.

On July 16, 2019, the court issued a Memorandum and Order granting in part and denying in part defendants' motion to dismiss. (ECF No. 19, Memorandum and Order ("July 16, 2019 Order").) The court granted the motion to dismiss the state claims against the County and the supervising officers in their official capacities, and the local claims against all defendants.[2] (*Id.* at 14-15, 17-18.) With respect to the state claims against the supervising officers in their individual capacities, the court noted that plaintiff could only proceed against individuals if there was (1) a statutory obligation to indemnify the individuals under the law (2) that would apply to the individuals' challenged conduct. (*Id*. at 15); *see* N.Y. Gen. Mun. Law § 50-e(1)(b). Neither party argued that a specific statute obligated the County to indemnify the supervising officers, and so the court was unable to decide whether to

---

[2] Defendants also moved to transfer this case to the Eastern District of New York courthouse located in Central Islip, New York. The court denied that motion in the July 16, 2019 Order.

4

dismiss the claims against the supervising officers in their individual capacities. (June 16, 2019 Order at 15-16.) Accordingly, the court denied without prejudice the motion to dismiss those claims, and stated that it would entertain a request from defendants to renew their motion to dismiss plaintiff's claims against the supervising officers in their individual capacities. (*Id.* at 16-17, 18.)

Defendants have renewed their motion to dismiss (*see* ECF No. 23, Motion to Dismiss; ECF No. 23-5, Memorandum in Support ("Mem."); ECF No. 25, Reply in Support ("Reply")), and plaintiff opposes the renewed motion (*see* ECF No. 24, Response in Opposition ("Opp.")).

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept as true all of the allegations contained in the complaint. *See Iqbal*, 556 U.S. at 678. The court, however, need not give such deference to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

**DISCUSSION**

Under New York state law, "[i]f an action or special proceeding is commenced against [an officer, appointee, or employee of a public corporation], but not against the public corporation, service of the notice of claim upon the public corporation shall be required *only if* the corporation has a statutory obligation to indemnify such person under this . . . or any other provision of law." N.Y. Gen. Mun. Law § 50-e(1)(b) (emphasis added). Defendants argue that the Nassau County Administrative Code imposes an obligation to indemnify. (Mem. at 3-4.) The Nassau County Administrative Code provides:

> The County shall indemnify and save harmless its employees in the amount of any judgment including punitive or exemplary damages obtained against such employees in any state or federal court, or in the amount of any settlement of a claim for lawful damages provided that the act or omission from which such judgment or settlement arose, occurred while the employee was acting within the scope of his public employment or duties; the determination of an act within the scope of public employment shall be determined by a majority vote of a panel consisting of one member appointed by the Nassau County Board of Supervisors, one member appointed by the County Executive and the Director of Personnel for the County of Nassau.

Nassau Cty. Admin. Code § 22-2.8(3)(a); (*see* Motion to Dismiss, Ex. A). On January 16, 2019, the Nassau County Employee Indemnification Board determined that the acts alleged here were within the scope of the supervising officers' duties. (Mem. at 4.)

6

Plaintiff argues that the question of whether the County had such an obligation is a factual question. (Opp. at 3, 5-7.) Plaintiff further argues that the County Employee Indemnification Board's decision to indemnify the supervising officers was a "self-serving" attempt to shield them from liability, made after the period within which plaintiff would have been required to serve a notice of claim (and after plaintiff filed her complaint). (*Id.* at 8-10.)

The question for the court is whether there was a statutory obligation to indemnify the supervising officers, based on their alleged conduct. N.Y. Gen. Mun. Law § 50-e(1)(b). The court finds that under the plain text of the County Administrative Code, the County had an obligation to indemnify the supervising officers if the alleged conduct "occurred while [they were] acting within the scope of [their] public employment or duties." Nassau Cty. Admin. Code § 22-2.8(3)(a).

Whether employees were acting within the scope of their employment or duties is a "fact-sensitive question." *Int'l Shared Servs., Inc. v. Cty. of Nassau*, 222 A.D.2d 407, 408 (2d Dep't 1995). "An employee acts within the scope of his employment when he acts for the purpose of serving the employer." *George v. N.Y.C. Transit Auth.*, No. 04-cv-3263, 2008 WL 4274362, at *2 (E.D.N.Y. Sept. 17, 2008) (citing *Burlington*

7

*Indus., Inc. v. Ellerth*, 524 U.S. 742, 756-57 (1998)).  Where the "conduct . . . alleged in the complaint amounts to intentional torts," it "falls outside the scope of [the employee's] employment."  *Grasso v. Schenectady Cty. Pub. Library*, 30 A.D.3d 814, 818 (3d Dep't 2006).  An employee does not engage in intentional wrongdoing merely because the employee acts intentionally; there is no intentional wrongdoing where the employee "acted solely in his [or her] role . . ., and not out of any personal motives or desire to harm plaintiff."  *Bielski v. Green*, 674 F. Supp. 2d 414, 428 (W.D.N.Y. 2009).

Defendants argue that plaintiff has the burden to offer some evidence that the conduct in question occurred outside the scope of the supervising officers' duties.  (Reply at 3.)  To support their position, defendants rely on two cases.  One is a decision from the Western District of New York holding that "to prevail on [an] assertion that [a] municipality is not required to indemnify the defendant municipal employee, the plaintiff is required to offer some evidence establishing that the defendant's alleged illegal actions occurred outside the scope of employment."  *Pierce v. Netzel*, No. 98-cv-532, 2004 WL 1055959, at *16 (W.D.N.Y. May 10, 2004), *report and recommendation adopted*, 2004 WL 2202643 (W.D.N.Y. Sept. 30, 2004), *aff'd*, 148 F. App'x 47 (2d Cir. 2005) (summary order).  *Pierce*, however, was decided in the context of the defendant's

8

motion for summary judgment. It would be impractical to require plaintiff in this case, at the motion to dismiss stage, to proffer evidence regarding whether the supervising officers were acting within the scope of their duties, before any discovery has taken place.

The other case relied upon by defendants is a decision by Magistrate Judge Tomlinson, which stated explicitly that "the court may rely on the allegations contained in plaintiffs' complaint" to ascertain whether employees were acting within the scope of their employment at the motion to dismiss stage. *Sandy Hollow Assocs. LLC v. Inc. Vill. of Port Wash. N.*, No. 09-cv-2629, 2010 WL 6419570, at *18 (E.D.N.Y. Sept. 6, 2010), *report and recommendation adopted*, 2011 WL 13374451 (E.D.N.Y. Apr. 13, 2011). Accordingly, at this stage, the court will consider only whether plaintiff has alleged facts that, when accepted as true, lead to a plausible inference that the supervising officers were acting outside the scope of their duties. *See Costabile v. Cty. of Westchester*, 485 F. Supp. 2d 424, 432 (S.D.N.Y. 2007) ("Accepting the allegations in the Amended Complaint as true, as we must at this stage, the conduct of defendants appears to fall outside the scope of their employment . . . .").

### I. Allegations Against Defendants Nadolny, Gonzalez, Bella, Russ, Cappicioni, Butcher, Gaddist, and Halpin

The alleged conduct by the supervising officers all occurred while the officers, and plaintiff, were on duty at work for the Police Department. Nonetheless, the conduct that is alleged against most of the individual defendants was not only discriminatory conduct, but also degrading conduct directed toward plaintiff by supervising officers who apparently believed they were part of a "paramilitary organization." (Am. Compl. ¶ 46.) The alleged conduct cannot be said at this stage to have been for the "purpose of serving the employer." *George*, 2008 WL 4274362, at *2. Nor can the court find that the supervising officers were acting "solely in [their] role[s]," and "not out of any personal motives or desire to harm plaintiff." *Bielski*, 674 F. Supp. 2d at 428.

Plaintiff's allegations against the supervising officers include that defendant Carol Nadolny refused to train plaintiff, and then berated plaintiff (as did defendant Fran Cappicioni) because of plaintiff's inability to perform tasks she had not been trained to do. (Am. Compl. ¶¶ 39, 44.) Plaintiff alleges that defendants Jane Gonzalez, Kathy Russ, and Elizabeth Bella (along with defendant Nadolny) refused to allow plaintiff to use leave that she was entitled to, and when plaintiff learned that other similarly-situated employees were

allowed to use their leave, defendant Bella told her that she "did not care" that plaintiff was being treated differently. (*Id.* ¶¶ 46, 49.)  Plaintiff further alleges that defendant Nancy Butcher conducted a search of plaintiff's mouth after plaintiff purchased a candy bar.  (*Id.* ¶ 40.)  Plaintiff also alleges that defendant Jan Gaddist (along with defendant Nadolny) instructed plaintiff to write a memo "about sleeping on the floor," after plaintiff had been accused of doing so.  (*Id.* ¶ 53.)  Plaintiff alleges that defendant Christine Halpin instructed plaintiff to move to a workstation in a separate section; then, while certain of plaintiff's co-workers were allowed to work in the section plaintiff had been told to leave, defendant Halpin proceeded to tune the television to "a movie with racial undertones."  (*Id.* ¶ 54.)  The next day, defendant Halpin allegedly tuned to a movie featuring "people in black face."  (*Id.* ¶ 55.)  In addition, plaintiff alleges various other incidents in which these supervising officers scolded her, denied her access to a union representative, and swung her chair around to ensure that she was not sleeping.  (*See id.* ¶¶ 41, 44, 50, 52, 63.)

A "harassing supervisor often acts for personal motives, motives unrelated and even antithetical to the objectives of the employer." *Burlington Indus.*, 524 U.S. at 757; *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 161 (2d Cir. 2014) ("Because it is usually motivated by something

personal, harassment, however egregious, ordinarily does not fall within the scope of employment."). The foregoing allegations, if true, could plausibly amount to intentional harassment, and thus the alleged conduct would fall outside the scope of the supervising officers' duties.

It is of little consequence to the "scope of employment" analysis that the County, after plaintiff filed her complaint, chose to indemnify the supervising officers. The court's inquiry, under New York law, is whether there was "a statutory obligation to indemnify" them. N.Y. Gen. Mun. Law § 50-e(1)(b). The County's decision to indemnify contained no specific findings about how the supervising officers' alleged conduct fell within the scope of the employees' duties. (*See* Motion to Dismiss, Ex. B.) The court does not agree that the County had a statutory obligation to indemnify supervisors allegedly engaged in intentional race-based harassment of an employee. If that were true, the County would be obligated to indemnify every employee accused of intentional wrongdoing, including, for example, those accused of sexual assault, so long as the alleged wrongdoing happened during working hours. Contrary to the County's contention, the court does not find it likely that the County would commit to indemnification for alleged intentional wrongdoing in all future cases, particularly

12

when doing so would not present a procedural bar to the plaintiff's claims, as it might have here.

Accordingly, the court finds that the County was not obligated to indemnify the supervising officers under the circumstances discussed above. Plaintiff has plausibly alleged that their conduct went beyond their official duties, and amounted to intentional race-based harassment. Plaintiff's state claims against defendants Nadolny, Gonzalez, Bella, Russ, Cappicioni, Butcher, Gaddist, and Halpin, in their individual capacities, are therefore not barred as a result of plaintiff's failure to serve a notice of claim.

## II. Allegations Against Defendant Stephanoff

Although the court does not find that the foregoing alleged conduct occurred within the scope of those supervising officers' duties, there is one more supervising officer's alleged conduct to consider: defendant Gregory Stephanoff. Plaintiff alleges that defendant Stephanoff "was a decision[-]maker and possessed the authority to effect [sic] [p]laintff's employment and bring about her termination." (Am. Compl. ¶ 19.) Plaintiff does not, however, specify whether defendant Stephanoff actually did play a role in plaintiff's termination, nor does she allege any other specific conduct on his part, beyond the conclusory assertions that he and the other defendants "discriminated against" plaintiff, "infringe[d] upon"

13

her rights, and "condoned a policy of unequal treatment." (*Id.* ¶¶ 105, 111 118, 136.)

Because plaintiff has not alleged that defendant Stephanoff engaged in any intentional wrongdoing, but alleges instead that he acted within the scope of his supervisory authority, the court finds that the County was obligated to indemnify him under its Administrative Code. Therefore, plaintiff's state claims against defendant Stephanoff are barred as a result of plaintiff's failure to file a notice of claim.

14

## CONCLUSION

For the foregoing reasons, defendants' renewed motion to dismiss is granted in part and denied in part. The motion to dismiss is granted with respect to defendant Stephanoff, but denied in all other respects. This case shall proceed to discovery on plaintiff's claims under federal law, and the state claims against defendants Nadolny, Gonzalez, Bella, Russ, Cappicioni, Butcher, Gaddist, and Halpin in their individual capacities.

The Clerk of Court is respectfully directed to terminate Gregory Stephanoff as a defendant in this action.

**SO ORDERED.**

Dated:   Brooklyn, New York
         September 8, 2020

/s/
Hon. Kiyo A. Matsumoto
United States District Judge

15